UNITED STATES of America ex rel.
Eugene WRIGHT

v.

David N. MYERS, Superintendent, State
Correctional Institution, Grater-
ford, Pennsylvania.

Misc. No. 3264.

United States District Court
E. D. Pennsylvania.

March 20, 1967.

Herman I. Pollock, Defender, Austin L. Hogan, Jr., Asst. Defender, Defender Association of Philadelphia, Philadelphia, Pa., for petitioner.

Thomas E. Mack, Dist. Atty., Luzerne County, Richard M. Goldberg, Asst. Dist. Atty., Luzerne County, Wilkes-Barre, Pa., for Commonwealth of Pennsylvania.

MEMORANDUM OPINION AND
ORDER

CLARY, Chief Judge.

Eugene Wright (hereinafter relator) filed his first Petition for Habeas Corpus in this Court in 1956, asserting various grounds, including police brutality, as the basis for the writ. After full evidentiary hearing, this Petition was dismissed. Thereafter he filed two additional Petitions for Habeas Corpus, both of which were denied without hear-

ing, the first because relator was not a pauper, and the second because he did not present the *Escobedo* question to the State Court. The instant Petition was filed after exhaustion of State remedies.

■ The present Petition is grounded on the Sixth and Fourteenth Amendments right to counsel, retroactively interpreted in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), which requires that an accused be given the assistance of counsel at every critical stage of a criminal prosecution. It is relator's claim that at critical stages of his prosecution, he was not afforded the protection of assistance of counsel.

For many years the Courts of Quarter Sessions and Oyer and Terminer of the County of Luzerne, Commonwealth of Pennsylvania, followed a practice provided by the Act of April 15, 1907, P.L. 62, § 1 (19 P.S. § 241) [1] which permitted a defendant to indicate whether or not he intended to enter a plea of guilty or not guilty, and waive the presentation of a Bill of Indictment to the Grand Jury. The form permitted by the Act and used in the instant case was rubber-stamped on the back of the Indictment and read as follows:

"Now, ___9___ day of ___June___ , 1953, being charged with the crime named in the within indictment, I hereby notify Louis G. Feldman, District Attorney, that I am willing to enter a plea of . . . . guilty without the presentation of bill of indictment before a Grand Jury, and I hereby request and direct that my plea be entered on record.
(Signed)     Eugene Wright
_____
                    Defendant."

This waiver, entered on each back of 22 Bills of Indictment, Numbers 178 to 200, June Sessions, 1953, Court of Oyer and Terminer and General Jail Delivery, Luzerne County, Pennsylvania, and signed by relator, was reinforced by his sig-

nature to the following printed declaration on the back of each Bill:

"Now ___9___ day of ___June___ , A.D. one thousand nine hundred and 53 Defendant pleads _____ guilty et de hoc; District Attorney similiter et issue.
(Signed)     Eugene Wright     _____"

Both forms were signed by relator, without counsel, on June 9, 1953. Thereafter, he was brought into Court for sentencing and the following colloquy occurred:

"Eugene Wright, defendant, examined by Mr. Hourigan (Assistant District Attorney):

Q. Mr. Eugene Wright, in Indictments 178 to 188, June Sessions, inclusive, you are charged with crimes of burglary and arson; and in Indictments Nos. 190 to 200 you are charged with the crime of burglary and larceny. You have already signed waiver of presentment to the Grand Jury and you have already entered a plea of guilty on all these charges; is that correct?

A. That is correct.

Q. And you have indicated this by signing in the rear of the indictments and in the front of the indictments.

A. I did.

Q. You are willingly entering that guilty plea.

A. Yes, sir.

Q. Are you willing to waive the right of counsel?

A. I am.

Q. In Indictment No. 178 June Sessions 1953, you are charged with burglary and larceny of the Gibbs Milling Company, located at 300 Lower Broadway, in the City of Nanticoke. Do you plead guilty to that charge?

A. Guilty.

Q. In Indictment No. 179 June Sessions, 1953, you are charged with

_____

1. Repealed by Rule 222 of the Pennsylvania Rules of Criminal Procedure, 19 P.S.

Appendix. See also Rule 215, effective January 1, 1965.

burglary and larceny of building located at 330 North Main Street, in the Township of Plymouth, and taking personal property of Stewart Kinney. Do you plead guilty to that charge?

A. I do.

Q. Indictment No. 194, June Sessions, 1953, charges you with burglary and larceny of building located on Route 11 in the Township of Plymouth, and there taking personal property of one Alfred Freeman. Do you plead guilty to that charge?

A. Guilty.

Q. In Indictment No. 189 ˙ June Sessions, 1953, you are charged with wilfully and maliciously setting fire to a school house located in West Nanticoke, in the Township of Plymouth. Do you plead guilty to that charge?

A. Guilty.

Q. And in all those charges you don't desire to be represented by counsel.

A. That's right.

*By the Court:*

Q. Your name is Eugene Wright.

A. That's right, sir.

Q. And you live at 48 Houseman Street in West Nanticoke, this County.

A. Yes, sir.

Q. And you heard the District Attorney recite all the various charges against you.

A. I did, sir.

Q. Including, specifically, the four that I have now before me.

A. Yes, sir.

Q. And you having waived the presentation of these cases to the Grand Jury, you have entered a plea of guilty to all of them.

A. Yes.

Q. And you understand now that you are appearing before me and pleading guilty to the charge of burglary in connection with the Gibbs Milling Company, located at 300 Broadway, Nanticoke; and the charge of burglary in connection with the home of Stewart Kinney in West Nanticoke; and the charge of burglary in connection with the business place of Alfred Freeman on Route 11; and you are pleading guilty to the charge of arson in connection with a fire at a school house located in West Nanticoke, Plymouth Township. Is that correct?

A. That is correct, sir.

Q. And you are entering these pleas voluntarily and of your own free will.

A. Yes, sir.

Q. Without influence or coercion.

A. Yes, sir.

Q. And you understand the importance and seriousness and the significance of these charges, do you?

A. I do, sir.

Q. And you are willing to enter all these pleas and admit the commission of these crimes without having a lawyer to consult with you.

A. Yes.

Q. You are sure of that.

A. Yes."

Additional testimony was then taken inquiring into the specifics of certain of the crimes charged, and relator was sentenced on Bills of Indictment 178, 179, 189 and 194. The sentence was 5 to 10 years' imprisonment for each Bill, sentences to run consecutively.

Because of a claim by the defendant of police brutality (the basis for the 1956 petition), and for additional inquiry into certain of the charged crimes, relator was returned to Court on the following day and again on June 23, 1953, as a result of which further hearing, there was a modification of sentence. The sentence on Bill of Indictment 189 was made to run concurrently with Indictment 194, and relator was additionally sentenced on Indictment 196 to 5 to 10 years' imprisonment, and on Indictment 183 to 2½ to 5 years' imprisonment, the sentences to run consecu-

tively. The remaining Bills were disposed of by the Trial Judge as follows:

> "By the Court:
>
> Make a note on the record that pleas as to the other cases upon which he has not been sentenced, and upon which he has entered pleas of guilty, the pleas are all received and made a matter of record, and in each of the cases in which he reaffirmed his guilt, to wit, Indictments numbered 180, 181, 184, 190, 193, 197, 198 and 199 June Sessions, 1953, sentence is postponed during good behavior; and in the cases wherein he has entered a plea of guilty, to wit: Indictments numbered 182, 185, 186, 187, 188, 191, 192, 195 and 200 June Sessions, 1953, the plea as originally entered will be received, and sentence thereon is suspended."

■ The defendant petitioner was at no time represented by counsel. He poses the question whether the signing of the waiver, plus the printed written plea, constitutes a guilty plea. Clearly it does.

■ The second question raised, opposed by the respondent here, is whether the signing of the waiver of indictment per se is a critical stage of the case. Since the first question is answered in the affirmative, that it constitutes a plea of guilty, no extended discussion is needed on this point because a guilty plea is a critical stage in a criminal prosecution. Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367 (1945); United States ex rel. Slebodnik v. Commonwealth of Pennsylvania, 343 F.2d 605 (3 Cir. 1965). It is also clear from the colloquy that both the Court and the Assistant District Attorney accepted the signed statements as a valid guilty plea. Therefore, under Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), assistance of counsel being absent, an intelligent waiver of counsel by relator was required at the signing of the pleas. Mr. Justice Black, in Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), de-

fined an intelligent waiver of counsel and the duty of the Court in respect thereof in the following language:

> "To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered."

However, the record is silent as to what transpired at this time, thus making applicable Carnley v. Cochrane, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962) and Commonwealth ex rel. O'Lock v. Rundle, 415 Pa. 515, 204 A.2d 439 (1964) which hold that when a conviction record does not affirmatively show the accused was offered counsel and declined counsel after an appropriate inquiry by the Court, the burden of proving an intelligent waiver is on the Commonwealth. Since the matter has been submitted to this Court purely on the record, intelligent waiver of counsel by relator may not be found.

■ In the instant case, nevertheless, it is also clear that relator at the time of his sentencing, although questioned concerning counsel, did not intelligently waive counsel. Clearly, he was under the impression that he had entered a plea of guilty, which was absolute and binding. That the situation might have been

rectified had the trial Court made a more penetrating examination is beside the point. The examination certainly did not meet the standards of *Von Moltke*. See also United States ex rel. Colwell v. Rundle, 251 F.Supp. 118 (E.D.Pa.1966).

Under the circumstances, and absent full adherence to the standards set forth by the Supreme Court of the United States, the writ must issue.

The Court expresses its thanks to Austin L. Hogan, Jr., Esquire, Assistant Defender, for his extremely able representation of relator on assignment by this Court.